1

2

3

4

5

6

7

8

9

10

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

11

12

13

14

15

16

17

| | | |
|---|---|---|
| TERRY LOUIS JONES, | ) | No. C 06-7236 JF (PR) |
| | ) | |
| Petitioner, | ) | ORDER DENYING PETITION |
| | ) | FOR WRIT OF HABEAS |
| vs. | ) | CORPUS |
| | ) | |
| DARRELL ADAMS, Warden | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | (Docket No. 15) |

18        Petitioner, Terry Louis Jones, a state prisoner proceeding pro se, seeks a writ of habeas

19   corpus pursuant to 28 U.S.C. § 2254 challenging his conviction following a plea of nolo

20   contendere to two counts of inflicting corporal injury on a spouse with a prior conviction (Cal.

21   Pen. Code § 273.5(a), (e)), three counts of misdemeanor child endangerment (Cal. Pen. Code §

22   273a(b)), and his admission of a prior "strike" allegation pursuant to California's "Three Strikes"

23   law.  (Cal. Pen. Code § § 667(b)-(i), 1170.12).  This Court found that the petition stated

24   cognizable claims and ordered Respondent to show cause why the petition should not be granted.

25   Respondent filed an answer addressing the merits of the petition, and Petitioner filed a traverse.

26   Having reviewed the papers and the underlying record, this Court concludes that Petitioner is not

27   entitled to relief based upon the claims presented and will deny the petition.

28   ///

1

1

**I. BACKGROUND**[1]

2     Following his <u>nolo contendere</u> plea on June 28, 2004, Petitioner was sentenced by the

3 Contra Costa Superior Court to a term of six years and eight months in state prison.  The

4 California Court of Appeal summarized the facts as follows:

5         According to testimony given at the preliminary hearing, S.R. (victim) was
married to Jones (Petitioner) and had three children with him at the time of the incidents.

6 S.R. was living apart from him in Bay Point, but he came to her home almost every day.
In October 2003, S.R. confronted Jones about another woman.  This argument occurred

7 outside of S.R.'s house, in front of their daughter.  Jones approached S.R. and said she
was casing their problems.  He knocked her down and started punching her.  S.R.

8 accidentally knocked over her daughter as she fell.  S.R. screamed and her daughter cried.
Jones grabbed S.R.'s mouth and told her to get inside the house.  Once inside, Jones

9 slapped her in the face, scratching her with his nail.  S.R. grabbed his leg and begged him
to stop hitting her.  She told Jones that she loved him and did not know why he was

10 hitting her.  Jones pushed her to the ground, told her she was a "sorry bitch," and started
to kick her, but stopped.  Their daughter was six feet away when this occurred.

11

12         Around the same time as this argument, Jones and S.R. were discussing a
permanent separation, causing Jones to become upset.  Jones sat at S.R.'s dining room
table with some kind of guy in his mouth and threatened to kill himself.  Their five year-

13 old daughter saw Jones with the gun in his mouth, cried, and said, "Don't kill yourself."
Jones responded that it would be better if he was dead because he could not stop hurting

14 S.R.

15         On the morning of November 11, 2003, S.R. was in the bathroom getting ready
for work when she began arguing with Jones about financial matters.  She left the

16 bathroom and went into her daughter's room.  Jones followed S.R.  He grabbed her head
and bit her under the eye, causing her to bleed, in front of their daughter.  After Jones bit

17 S.R., he left the room and told their two sons to tell S.R. that she was being a "bitch."

18 The Court of Appeal summarized the plea agreement as follows:

19         On June 28, 2004, after a jury had been sworn, the trial court stated on the record
that the attorneys had been working all weekend on the case, and that defense counsel had

20 provided a great deal of information regarding Jones's need for a heart transplant.  The
court then stated that "in the interest of justice," it would allow Jones to change his pleas

21 on all five counts so that he could try to obtain a heart transplant.

22         The court then discussed some of the terms of the proposed plea agreement.  It
stated that it would not take a plea on Jones's alleged prior serious felony conviction,

23 Jones would waive his right to pretrial credits.  After Jones stated he would waive his
pretrial credits, the court explained that Jones would remain in the county jail and would

24 be given passes that would allow him to leave the jail for the time needed to attend doctor
appointments, including two or three-day passes if necessary.  The court then stated:

25

26         "The only thing is I'm balancing the interest of justice, the fact that its going to
keep your alive if you have this heart transplant versus the need to offer you additional

27 ―――――――――――――――

28       [1] Unless otherwise indicated, the relevant facts are elicited from the unpublished opinion
of the California Court of Appeal, First Appellate District, <u>People v. Terry Louis Jones</u>, Case No.
A109450, April 26, 2006, Respondent's Exhibit 6 at 1-6.

1    time in state prison.  I think justice would prevail in either regard.

2         "In the event that you violate any of the restraining orders, that is, to contact the
     victim in this case, including the children, in any manner - that's through a third party,
3    whether it's in writing, whether it's through anybody else except your lawyer - I will not
     be bound by this promise, and I will not give you your plea back.  That's how serious I
4    am that you cannot have contact.

5         "My job is to protect these kids and this woman.  You may disagree with me.  As
     long as you understand it's all up to you, you cannot afford to have any contact in any
6    manner with them.  Otherwise, all bets are off.  Remember, you'll be going to prison for a
     long, long time.

7
          "Do you understand that?"
8
          Jones responded, "Yes, I do," and indicated that he did not have any questions.
9    The court then reviewed with Jones an "advisement of rights and waiver and plea form."
     Such a form, executed by Jones, his attorney, and the court is contained in the record....
10   Among other things, the form indicated that its terms could be supplemented by
     statements made on the record at hearing, stating under a subheading entitled
11   "voluntariness of plea":

12        "Except for what is promised to me in open court **ON THE RECORD** I have not
     been promised or offered anything by anyone (including my attorney) that causes me to
13   enter a guilty/no contest plea."

14        The form includes a reference to Jones's maximum prison term as 12 years 4
     months, and states that his sentence to state prison will be two years.
15
          The court asked Jones if he had gone through the form so as to understand the
16   rights and consequences of his pleas, and Jones indicated that he had....

17        After Jones's counsel indicated that there was a factual basis for the pleas, the
     court asked Jones what his pleas were to all the counts and allegations, to which Jones
18   indicated he was making a "no contest, as a best interest plea," and the court then
     announced, "I'll accept the plea."
19
          The court then found Jones guilty, that there was a factual basis for the plea, that
20   the plea was free and voluntary, and that Jones had knowledge of his rights and the
     consequences of the plea.  The court indicated that it would not sentence Jones at that
21   point, and Jones waived the time for sentencing with his counsel's consent.

22   The Court of Appeal summarized Jones's violation of the restraining order and the trial
     court's sentencing as follows:
23
          The court signed orders releasing Jones from custody numerous times between
24   July and September 2004, including from September 13 to 18, 2004.  After it was alleged
     that Jones had violated his restraining order, the court stated that Jones had a right to a
25   sentencing hearing, and that it would hold a dual hearing for the violation of the order and
     for sentencing.  It explained that the prosecution was "going to be required to prove"
26   Jones's violation of the restraining order.

27        At the hearing on the alleged restraining order violations, S.R. testified that she
     saw Jones at their son's football game in Livermore on September 18, 2004, that he
28   lingered at the game for more than a quarter, appeared to call her on a cell phone while
     there, and stared at her before he left.  The People also presented testimony and phone

3

1    records which indicated that during a two-hour period on the evening of the same date, 21
2    calls were made to S.R.'s cell phone from the area of the jail where Jones was located.

3        Jones presented three witnesses who accompanied Jones to the football game that
day.  They testified that Jones had attended the game at their invitation to see another boy
4    play, that he did not indicate at any time that he knew his son was on one of the teams
playing that day, that he left before the game started right after noticing S.R. was present,
5    and that they had not seen him use a cell phone or pay undue attention to S.R. while he
was there.

6        The prosecution then called S.R.'s and Jones's 13-year-old son.  He testified,
among other things, that one of Jones's witnesses at the hearing had approached him on a
7    date prior to September 18, 2004, and told him that his father would come to one of his
games soon, that he had seen his father at the September 18, 2004 game, and that his
8    father had stayed for more than a quarter.

9        The court found that Jones had willfully violated the court's restraining order.
Jones subsequently waived his right to a jury trial on the prior serious felony conviction
10   allegation and admitted that it was true.  The court sentenced Jones for the five counts to
a term which totaled six years eight months in state prison and imposed various fines.

11

12    Petitioner appealed his conviction in the California Court of Appeal on October 13, 2005.

13 On April 26, 2006 that court affirmed the trial court's judgment.  Petitioner filed a petition for

14 review in the California Supreme Court, which was summarily denied on August 16, 2006.

15 Petitioner filed the instant petition on November 22, 2006.

16                      **II. DISCUSSION**

17 **A.**      **Standard of Review**

18      This Court will entertain a petition for a writ of habeas corpus "in behalf of a person in

19 custody pursuant to the judgment of a State court only on the ground that he is in custody in

20 violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).

21 The petition may not be granted with respect to any claim adjudicated on the merits in state court

22 unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to,

23 or involved an unreasonable application of, clearly established federal law, as determined by the

24 Supreme Court of the United States; or (2) resulted in a decision that was based on an

25 unreasonable determination of the facts in light of the evidence presented in the State court

26 proceeding."  28 U.S.C. § 2254(d).

27      "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court

28 arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if

1   the state court decides a case differently than [the] Court has on a set of materially

2   indistinguishable facts." Williams (Terry) v. Taylor, 529 U.S. 362, 412-413 (2000). "Under the

3   'reasonable application clause,' a federal habeas court may grant the writ if the state court

4   identifies the correct governing legal principle from [the] Court's decisions but unreasonably

5   applies that principle to the facts of the prisoner's case." Id. at 413. "[A] federal habeas court

6   may not issue the writ simply because that court concludes in its independent judgment that the

7   relevant state-court decision applied clearly established federal law erroneously or incorrectly.

8   Rather, that application must also be unreasonable." Id. at 411.

9        "[A] federal habeas court making the 'unreasonable application' inquiry should ask

10  whether the state court's application of clearly established federal law was 'objectively

11  unreasonable.'" Id. at 409. In examining whether the state court decision was objectively

12  unreasonable, the inquiry may require analysis of the state court's method as well as its result.

13  Nunes v. Mueller, 350 F.3d 1045, 1054 (9th Cir. 2003). The standard for "objectively

14  unreasonable" is not "clear error" because "[t]hese two standards . . . are not the same. The gloss

15  of error fails to give proper deference to state courts by conflating error (even clear error) with

16  unreasonableness." Lockyer v. Andrade, 538 U.S. 63, 75 (2003).

17       A federal habeas court may grant the writ if it concludes that the state court's adjudication

18  of the claim "results in a decision that was based on an unreasonable determination of the facts in

19  light of the evidence presented in the State court proceeding." 28. U.S.C. § 2254(d)(2). The

20  court must presume correct any determination of a factual issue made by a state court unless the

21  petitioner rebuts the presumption of correctness by clear and convincing evidence. 28. U.S.C. §

22  2254(e)(1).

23       Where, as here, the highest state court to consider the petitioner's claims issued a

24  summary opinion which does not explain the rationale of its decision, federal review under §

25  2254(d) is of the last state court opinion to reach the merits. See Ylst v. Nunnemaker, 501 U.S.

26  797, 801-06 (1991); Bains v. Cambra, 204 F.3d 964, 970-71, 973-78 (9th Cir. 2000). In this

27  case, the last state court opinion to address the merits of petitioner's claim is the unpublished

28  opinion of the California Court of Appeal.

1    **B.      Analysis of Petitioner's Claims**

2          1.      <u>Petitioner's Constitutional Rights Were Not Violated by the Trial Court's Refusal to Allow Him to Withdraw His Plea</u>.

3

4          Petitioner claims that he was denied his statutory right, pursuant to California Penal Code

5    Section 1192.5, to withdraw his plea.  Petition at 7.  Petitioner maintains that the trial court

6    imposed "several unilateral conditions" to which Petitioner never agreed to.  <u>Id.</u>  "As a result,

7    [Petitioner] was denied his statutory right to withdraw his plea...."  Traverse at 2.  Petitioner

8    contends that even though he stated in open court that he understood that the sentencing judge

9    would not be bound by the plea agreement if Petitioner violated it, though Petitioner would still

10   be bound by the agreement, in fact he did not understand the situation and thus did not waive his

11   right to withdraw his plea.  <u>Id.</u>

12         "[W]hen a plea rests in any significant degree on a promise or agreement of the

13   prosecutor, so that it can be said to be a part of the inducement or consideration, such promise

14   must be fulfilled."  <u>Santobello v. New York</u>, 404 U.S. 257, 262 (1971).  Fundamental fairness of

15   due process requires that promises made during plea bargaining and analogous contexts be

16   respected; however, this rule is subject to two conditions: the agent must be authorized to make

17   the promise and the defendant must rely to his detriment on the promise.  <u>Johnson v. Lumpkin</u>,

18   769 F.2d 630, 633 (9th Cir. 1985).  Neither the defendant nor the government is bound by a plea

19   agreement until it is approved by the court.  <u>United States v. Washman</u>, 66 F.3d 210, 213 (9th

20   Cir. 1995) (citation omitted).  The government may be bound even before the court accepts the

21   plea if there has been detrimental reliance by the defendant.  <u>United States v. Kuchinski</u>, 469

22   F.3d 853, 858 (9th Cir. 2006).  Once the court makes the requisite factual findings and accepts

23   the plea, the terms of the plea agreement are "fixed" and enforceable.  <u>Brown v. Poole</u>, 337 F.3d

24   1155, 1159 (9th Cir. 2003).  Plea agreements are contractual in nature and subject to contract law

25   standards of interpretation.  <u>In re: Ellis</u>, 356 F.3d 1198, 1207 (9th Cir. 2004); <u>United States v.</u>

26   <u>Kamer</u>, 781 F.2d 1380, 1387 (9th Cir. 1986).  Where the defendant is in breach, courts have

27   released the government from its obligations.  See <u>United States v. Sandoval-Lopez</u>, 122 F.3d

28   797, 800 (9th Cir. 1997).

1  Where the government is in breach, courts have remedied the situation by several approaches,

2  including allowing the defendant to withdraw the guilty plea or ordering specific performance by

3  the government.  Id.; see, e.g., Brown, 337 F.3d at 1161-62.

4       The construction of state court plea agreements is governed by state contract law, and the

5  federal court should not disturb a reasonable state court interpretation.  Ricketts v. Adamson, 483

6  U.S. 1, 6 n.3 (1987).  In determining whether a plea agreement has been broken, courts look to

7  what was reasonably understood by the parties to be the terms of the agreement.  Id.; United

8  States v. Arnett, 628 F.2d 1162, 1164 (9th Cir. 1979).  See, e.g., Quarles v. Kane, 482 F.3d 1154,

9  1155 (9th Cir. 2007).  "'If the terms of the plea agreement have a clear and unambiguous

10 meaning, then [the] court will not look to extrinsic evidence to determine their meaning.'"

11 United States v. Trapp, 257 F.3d 1053, 1056 (9th Cir. 2001) (quoting United States v. Clarke,

12 218 F.3d 1092, 1095 (9th Cir. 2000)).  A party breaches a plea bargain if they fail to live up to

13 the promises they made under the agreement.  Buckley v. Terhune, 441 F.3d 688, 698 (9th Cir.

14 2006).

15      Respondent initially contends that "violations of state law provide no basis for federal

16 habeas relief."  Resp. Mem at 6.  Respondent relies on Estelle v. McGuire, 502 U.S. 62, 67-68

17 (1991), for the proposition that "it is not the province of a federal habeas court to reexamine

18 state-court determinations on state-law questions.  In conducting habeas review, a federal court is

19 limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United

20 States."  Id.  Respondent asserts that "a state court's interpretation of state law binds a federal

21 court sitting in habeas corpus."  Id.  (citing Bradshaw v Richey, 126 S. Ct. 602, 604 (2005);

22 Mullaney v. Wilbur, 421 U.S. 684, 691 (1975)).

23      The state appellate court found that the trial court did not "unilaterally engraft conditions

24 on top of the plea agreement and later disapprove the agreement," but instead "enforced the

25 agreement's terms as agreed to by Jones on the record in open court."  Resp. Ex. 6 at 7.  The

26 appellate court's conclusion was based upon the following determinations: "First, although not

27 addressed by the parties, we find nothing in the record that supports Jones's contention that he

28 executed the plea form prior to the court stating the conditions at issue here."  Id.

1    "Second, assuming for the sake of argument that Jones executed this plea form before the court

2    stated its conditions, these conditions nonetheless were an integral part of the plea agreement, to

3    which Jones agreed prior to the court's acceptance of his plea." Id. at 8. The appellate court also

4    held that the trial court's requirement that Jones abide by the restraining order, or face the

5    consequence of having that court invalidate the agreement, was a condition to which Jones

6    expressly agreed in open court. Id. at 10. Thus, the appellate court found that "Jones's statutory

7    or constitutional rights were [not] violated by the court's actions." Id. at 13.

8         This Court concludes that Petitioner's rights were not violated by the trial court's refusal

9    to allow him to withdraw his plea. While Petitioner claims that he did not understand that he

10   was giving up his right to withdraw the plea, the trial court specifically stated on the record that if

11   Petitioner violated the agreement it would not be bound by the plea, and at the same time

12   Petitioner would not be able to withdraw the plea. The record shows that Petitioner stated in

13   open court that he understood and agreed to the trial court's conditions. Thus, Petitioner's

14   constitutional rights were not infringed. Accordingly, the state court's determination was not

15   contrary to, or an unreasonable application of, clearly established Supreme Court precedent, nor

16   was it based on a unreasonable determination of the facts in light of the evidence presented. 28

17   U.S.C. § 2254(d)(1),(2).

18        2.    Petitioner Was Not Entitled to a Jury Trial, Nor to a Verdict Based on Facts
                Found Beyond a Reasonable Doubt, on the Alleged Restraining Order Violation.
19

20        Petitioner's second and third claims assert that Petitioner was denied his Sixth

21   Amendment right to a jury trial on the alleged restraining order violation, and that he was denied

22   a verdict based upon facts found beyond a reasonable doubt. Petition at 7. Petitioner maintains

23   that the trial court's findings of fact did not meet the "beyond a reasonable doubt" burden of

24   proof, and that there was no agreement regarding the procedures or the evidentiary standard that

25   the trial court would use to determine whether the conditions had been breached. Id.

26   Additionally, Petitioner contends that there was no agreement regarding the prison term to be

27   imposed in the event of a violation of the plea agreement. Id. Petitioner contends that because

28   he never agreed to these terms, the entire plea agreement is void. Id.

1   The Sixth Amendment guarantees a criminal defendant the right to a trial by jury.  U.S.

2   Const. amend. VI.  This right to a jury trial has been made applicable to state criminal

3   proceedings via the Fourteenth Amendment.  Duncan v. Louisiana, 391 U.S. 145, 149-50 (1968).

4   The Supreme Court's Sixth Amendment jurisprudence was significantly expanded by Apprendi

5   v. New Jersey, 530 U.S. 466 (2000), and its progeny, which extended a defendant's right to trial

6   by jury to the fact finding used to make enhanced sentencing determinations as well as the actual

7   elements of the crime.  "Other than the fact of a prior conviction, any fact that increases the

8   penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and

9   proved beyond a reasonable doubt."  Apprendi, 530 U.S. at 490.  The "statutory maximum" for

10  Apprendi purposes is the maximum sentence a judge could impose based solely on the facts

11  reflected in the jury verdict or admitted by the defendant; that is, the relevant "statutory

12  maximum" is not the sentence the judge could impose after finding additional facts, but rather is

13  the maximum he or she could impose without any additional findings.  Blakely v. Washington,

14  542 U.S. 296, 303-04  (2004).  The Court reaffirmed this basic principle when it determined that

15  the federal sentencing guidelines violated the Sixth Amendment because they imposed

16  mandatory sentencing ranges based on factual findings made by the sentencing court.  See United

17  States v. Booker, 543 U.S. 220, 233-38 (2005).  The sentencing guidelines were unconstitutional

18  because they required the court to impose an enhanced sentence based on factual determinations

19  not made by the jury beyond a reasonable doubt.  Id. at 243-245.

20      In Cunningham v. California, 127 S. Ct. 856 (2007), the Court held that California's

21  determinate sentencing law ("DSL") violated the Sixth Amendment because it allowed the

22  sentencing court to impose an increased sentence based on aggravating facts that it found to exist

23  by a preponderance of the evidence.  Id. at 860, 870-71.  The sentencing court was directed under

24  the DSL to start with a "middle term" and then move to an "upper term" only if it found

25  aggravating factual circumstances beyond the elements of the charged offense.  Id. at 862.

26  Concluding that the middle term was the relevant statutory maximum, and noting that

27  aggravating facts were found by a judge and not the jury, the Court held that the California

28  sentencing law violated the rule set out in Apprendi.  Id. at 871.  Although the DSL gave judges

9

1   broad discretion to identify aggravating factors, this discretion did not make the upper term the

2   statutory maximum because the jury verdict alone did not authorize the sentence and judges did

3   not have the discretion to choose the upper term unless it was justified by additional facts.  Id. at

4   868-69.

5         Because Cunningham had not yet been decided when Petitioner's conviction became final

6   in 2006.  See Bowen v. Roe, 188 F.3d 1157, 1158-59 (9th Cir. 1999) (conviction final after time

7   for filing petition for writ of certiorari has elapsed), there is a serious question whether

8   retroactive application of Cunningham would violate Teague v. Lane, 489 U.S. 288 (1989).

9   However, this Court need not address retroactivity because Blakely made clear before

10  Petitioner's conviction became final that the rationale of Apprendi and its progeny does not

11  prevent a defendant from waiving his Apprendi rights.  Blakely, 542 U.S. at 310.  "When a

12  defendant pleads guilty, the State is free to seek judicial sentence enhancements so long as the

13  defendant either stipulates to the relevant facts or consents to judicial fact finding."  Id.  (citations

14  omitted).

15        "When a plea rests in any significant degree on a promise or agreement of the prosecutor,

16  so that it can be said to be a part of the inducement or consideration, such promise must be

17  fulfilled."  Santobello v. New York, 404 U.S. at 262.  Fundamental fairness of due process

18  requires that promises made during plea bargaining and analogous contexts be respected;

19  however, this rule is subject to two conditions: the agent must be authorized to make the promise

20  and the defendant must rely to his detriment on the promise.  Johnson v. Lumpkin, 769 F.2d at

21  633.  Neither the defendant nor the government is bound by a plea agreement until it is approved

22  by the court.  See United States v. Washman, 66 F.3d at 213 (citation omitted).  The government

23  may be bound even before the court accepts the plea if there has been detrimental reliance by the

24  defendant.  United States v. Kuchinski, 469 F.3d at 858.  Once the court makes the requisite

25  factual findings and accepts the plea, the terms of the plea agreement are "fixed" and enforceable.

26  Brown v. Poole, 337 F.3d at 1159.  Plea agreements are contractual in nature and subject to

27  contract law standards of interpretation.  In re: Ellis, 356 F.3d at 1207; United States v. Kamer,

28  781 F.2d at 1387.

1    Where the defendant is in breach, courts have released the government from its obligations.  See

2    Sandoval-Lopez, 122 F.3d at 800.  Where the government is in breach, courts have remedied the

3    situation by several approaches, including allowing the defendant to withdraw the guilty plea or

4    ordering specific performance by the government.  Id..; see, e.g., Brown, 337 F.3d at 1161-62.

5           As discussed previously, the construction of state court plea agreements is governed by

6    state contract law, and the federal court should not disturb a reasonable state court interpretation.

7    Ricketts v. Adamson, 483 U.S. at 6 n.3.  In determining whether a plea agreement has been

8    broken, courts look to what was reasonably understood by the parties to be the terms of the

9    agreement.  Id.; United States v. Arnett, 628 F.2d at 1164; see, e.g., Quarles v. Kane, 482 F.3d at

10   1155.  "'If the terms of the plea agreement have a clear and unambiguous meaning, then [the]

11   court will not look to extrinsic evidence to determine their meaning.'"  United States v. Trapp,

12   257 F.3d at 1056 (quoting Clarke, 218 F.3d at 1095).  A party breaches a plea bargain if they fail

13   to live up to the promises they made under the agreement.  Buckley v. Terhune, 441 F.3d at 698.

14          Respondent argues that "'once a state court has, within broad bounds of reasonableness,

15   determined that a breach of a plea agreement results in certain circumstances, a federal habeas

16   court must independently assess the effect of those consequences on federal constitutional rights.

17   This independent assessment, however, proceeds without second-guessing the finding of a breach

18   and is not a license to substitute a federal interpretation of the terms of a plea agreement for a

19   reasonable state interpretation."  Resp. Mem. at 7 (quoting Ricketts, 483 U.S. at  6).  Respondent

20   maintains that since "the state appellate court determined that the trial court followed proper

21   procedures in reviewing [P]etitioner's alleged restraining order violations," Petitioner's claim is

22   without merit.  Id. at 8.

23          The state appellate court found that there was "nothing improper about the procedures

24   followed by the [trial] court in reviewing the alleged restraining order violations."  Resp. Ex. 6 at

25   13.  First, "the trial court was required only to make its determinations pursuant to a

26   'preponderance of the evidence,' as provided for in California Rules of Court, rule 4.420(b)."  Id.

27   at 14.  While the trial court did not specifically state the rules of evidence or burden of proof, it

28   did hear testimony and sustain standard evidentiary objections.  Id. at 13.  Nothing the trial court

1    did indicated that it "followed anything less than this standard." Id. at 14.  The appellate court

2    rejected Petitioner's contention that Blakely v. Washington, 542 U.S. 296 (2004), entitled

3    Petitioner to a jury trial because "the facts of his restraining order violations were used to

4    determine his sentence... must be resolved against him in light of our Supreme Court's ruling in

5    People v. Black, 35 Cal. 4th 1238 (2005)."  Ultimately, the appellate court found that Petitioner

6    did not provide any authority to demonstrate that he had a right to a jury trial or a reasonable

7    doubt standard of proof.  Id. at 14.  The appellate court agreed with the trial court's finding "that

8    the prosecution witnesses were highly credible and that the 'entire restraining order was willfully

9    violated.'"  Id. at 13-14.  Finally, the appellate court found that Petitioner had "waived any right

10   he had to a jury trial on the underlying criminal allegations made against him" because he failed

11   to object to any of the court's procedures at the time.  Id. at 15.

12          This Court concludes that Petitioner's right to a jury trial and right to a reasonable doubt

13   standard of proof were not violated by the trial court's hearing on the alleged restraining order

14   violation.  As the appellate court recognized, there was nothing inappropriate about the

15   procedures the trial court followed.  Based on its review of the underlying record, the Court finds

16   that Petitioner knowingly and voluntarily admitted to his prior serious felony conviction.  Resp.

17   Ex. 6 at 3.  Moreover, the trial court explicitly stated what Petitioner's sentence would be under

18   the plea, and explained in detail that if Petitioner violated the plea agreement he would go to jail

19   for a long time.  Id.  Additionally, the plea form that Petitioner signed indicated that his

20   maximum sentence could be twelve years and four months.  Id. at 4.  Although the trial court did

21   not specify what Petitioner's term would be if he violated the agreement, it did warn Petitioner

22   that it would not be bound by the agreement if Petitioner violated its terms.  Id. at 3.  Petitioner

23   did not object to the procedures during the hearing concerning the violation of the restraining

24   order at any time thereafter.

25          Under AEDPA's highly deferential standard of review, this Court concludes that the

26   underlying record demonstrates that the terms of Petitioner's plea were clear, and Petitioner

27   unambiguously stated on the record in open court that he understood the terms of the plea and

28   agreed to abide by it.

1   Petitioner has not overcome the "presumption of correctness" pursuant to 28 U.S.C. §

2   2254(e)(1).  Although Cunningham makes clear that a sentencing court may not determine facts

3   that result in an increase to a defendant's sentence beyond the statutory maximum, that precedent

4   is not applicable in Petitioner's case.  Here, Petitioner agreed to the terms of the plea in open

5   court.  Petitioner admitted to the prior "strike" conviction.  Moreover, the trial court imposed the

6   lower sentence term, the statutory *minimum*, and then doubled the term based upon Petitioner's

7   admission that he had a prior "strike" pursuant to California's "Three Strikes" law.  At no point

8   did the trial court did not make an independent determination of fact.  Accordingly, the state

9   court's determination was not contrary to, or an unreasonable application of, clearly established

10  Supreme Court precedent, nor was it based on a unreasonable determination of the facts in light

11  of the evidence presented.  28 U.S.C. § 2254(d)(1),(2).

12              3.      Petitioner's Plea Was Voluntary and Intelligent

13          Petitioner next claims that his plea was not voluntary and intelligent.  Petition at 8.

14  Petitioner contends that he admitted his prior conviction "in return for no promised benefit."  Id.

15  Petitioner maintains that he never waived his right to a jury trial or to factual findings beyond a

16  reasonable doubt regarding his prior conviction.  Id.   Furthermore, he claims that the trial court

17  should have imposed two sentences on the record, one for compliance with the court's order and

18  one for failing to comply with the court's order.  Id.  Because this was not done, there was no

19  meeting of the minds, and thus, his plea was neither voluntary nor intelligent.  Id.

20          A defendant who pleads guilty cannot later raise in habeas corpus proceedings

21  independent claims relating to the deprivation of constitutional rights that occurred before the

22  plea of guilty.  Haring v. Prosise, 462 U.S. 306, 319-20 (1983) (guilty plea forecloses

23  consideration of pre-plea constitutional deprivations).  A defendant who pleads guilty may not

24  collaterally challenge a voluntary and intelligent guilty plea entered into with the advice of

25  competent counsel.  United States v. Broce, 488 U.S. 563, 574 (1989); Mabry v. Johnson, 467

26  U.S. 504, 508 (1984).  Nor may he collaterally attack his plea's validity merely because he made

27  what turned out, in retrospect, to be a poor deal.  Bradshaw v. Stumpf, 545 U.S. 175, 186 (2005).

28  ///

1       The only challenges left open in federal habeas corpus after a guilty plea is the voluntary

2   and intelligent character of the plea and the adequacy of the advice of counsel.  Hill v. Lockhart,

3   474 U.S. 52, 56-57 (1985); Tollett v. Henderson, 411 U.S. 258, 267 (1973).  A defendant who

4   pleads guilty upon the advice of counsel may attack the voluntary and intelligent character of the

5   guilty plea only by showing that the advice he received from counsel was not within the range of

6   competence demanded of attorneys in criminal cases.  Id.; Lambert v. Blodgett, 393 F.3d 943,

7   979 (9th Cir. 2004); United States v. Signori, 844 F.2d 635, 638 (9th Cir. 1988); Hudson v.

8   Moran, 760 F.2d 1027, 1030 (9th Cir. 1985).

9       Due process requires that a guilty plea be both knowing and voluntary because it

10  constitutes the waiver of three constitutional rights: the right to a jury trial, the right to confront

11  one's accusers, and the privilege against self-incrimination.[2]  Boykin v. Alabama, 395 U.S. 238,

12  243 (1969).  It does not, however, require a state court to enumerate all the rights a defendant

13  waives when he enters a guilty plea as long as the record indicates that the plea was entered

14  voluntarily and understandingly.  Rodriguez v. Ricketts, 798 F.2d 1250, 1254 (9th Cir. 1986),

15  cert. denied, 479 U.S. 1057 (1987); Wilkins v. Erickson, 505 F.2d 761, 763 (9th Cir. 1974).[3]

16      A trial judge may not accept a defendant's guilty plea without creating a record

17  affirmatively showing that the plea was knowing and voluntary: a silent record is invalid.

18

19     [2] By pleading guilty, a defendant does not waive his privilege against self-incrimination at
the sentencing phase.  Mitchell v. United States, 526 U.S. 314, 321 (1999).  The waiver of the

20  self-incrimination privilege that occurs during a guilty plea colloquy refers to the privilege that
could be invoked if the defendant went to trial, and not to the privilege in all contexts.  See id. at

21  324.  No negative inferences may be drawn from the defendant's failure to testify with respect to
factual determinations  respecting the details of the crime at the sentencing proceedings

22  following a guilty plea.  See id.

23     [3] Due process neither requires a conscious waiver with respect to each potential defense

24  relinquished by a plea of guilty, United States v. Broce, 488 U.S. 563, 573 (1989), nor that a state
court establish a factual basis for a guilty plea absent special circumstances, such as a defendant's

25  protestation of innocence, Rodriguez v. Ricketts, 777 F.2d 527, 528 (9th Cir. 1985).

26  Additionally, as long as the defendant expresses a desire to plea and there is strong evidence of
actual guilt, it is inconsequential that the defendant refuses to plea to a specific element of the

27  charged crime.  United States v. King, 257 F.3d 1013, 1022 (9th Cir. 2001) (court upheld a plea
in a mail fraud case where the defendant refused to admit that he made any false statements, but

28  he did admit other elements of mail fraud, he expressed a desire to plead guilty, and there was
independent evidence that he did make false statements).

1  See Boykin, 395 U.S. at 242.[4]  However, Boykin's presumption of invalidity does not extend to

2  collateral challenges.  Parke v. Raley, 506 U.S. 20, 29-30 (1992).  A habeas petitioner bears the

3  burden of establishing that his guilty plea was not knowing and voluntary.  Id. at 31-34.

4        The long-standing test for determining the validity of a guilty plea is "'whether the plea

5  represents a voluntary and intelligent choice among the alternative courses of action open to the

6  defendant.'"  Id. at 29 (quoting North Carolina v. Alford, 400 U.S. 25, 31 (1970)).  This requires

7  a review of the circumstances surrounding the plea.  Brady v. United States, 397 U.S. 742, 749

8  (1970).  The totality of the circumstances includes "both the defendant's subjective state of mind

9  and the constitutional acceptability of the external forces inducing the guilty plea."  Doe v.

10  Woodford, 508 F.3d 563, 570 (9th Cir. 2007) (internal quotations and citations omitted).  Of

11  particular importance is that the defendant enter a guilty plea with sufficient awareness of the

12  relevant circumstances and likely consequences, Brady, 397 U.S. at 748, and that he understand

13  the law in relation to the facts, McCarthy v. United States, 394 U.S. 459, 466 (1969).  A guilty

14  plea not made voluntarily and intelligently violates due process.  Boykin, 395 U.S. at 242.

15  A plea is "involuntary" if it is the product of threats, improper promises, or other forms of

16  wrongful coercion, Brady, 397 U.S. at 754-55, and is "unintelligent" if the defendant is without

17  the information necessary to assess intelligently "the advantages and disadvantages of a trial as

18  compared with those attending a plea of guilty," Hill v. Lockhart, 474 U.S. at 56.

19        Respondent argues that Petitioner's admission of his prior conviction was both voluntary

20  and intelligent.  Resp. Mem. at 9.  Respondent relies upon Mabry v. Johnson, 467 U.S. 504, 509

21  (1984) (internal quotation marks omitted), for the proposition that:

22        "[a] plea of guilty entered by one fully aware of the direct consequences, including
          the actual value of any commitments made to him by the court, prosecutor, or his own
23        counsel, must stand unless induced by threats (or promises to discontinue improper
          harassment), misrepresentation (including unfulfilled or unfulfillable promises), or
24        perhaps by promises that are by their nature improper as having no proper relationship to
          the prosecutor's business (e.g. bribes)."

25

26  ///

27

28
_____
   [4]A trial court also must ensure that a criminal defendant is competent to enter a guilty plea.
Godinez v. Moran, 509 U.S. 389, 396 (1993).

1   Respondent contends that "the record demonstrates that the state court's determination was not

2   an unreasonable application of Supreme Court precedent." Id. at 10.  Defense counsel informed

3   the court that Petitioner did not want to take up anyone's time, and that he understood that there

4   "'really [was] no controverted issue with the prior strike.'" Id. at 10 (quoting Resp. Ex. 2

5   (Reporter's Transcript ("RT")), Vol. 6 at 24).  Petitioner then "acknowledged his right to, and

6   relinquishment of, a trial on the strike in his written plea form." Id.; Resp. Ex. 2 at 27-29.  The

7   court then advised Petitioner that the strike would double his term, and Petitioner "acknowledged

8   that he was admitting the strike freely and voluntarily." Id.; Resp. Ex. 2 at 30.  Thus, Respondent

9   maintains that Petitioner's plea was knowing and voluntary.

10          The appellate court found that Petitioner knowingly and voluntarily accepted the plea

11  agreement.  Resp. Ex. 6 at 11.  The court noted that Petitioner and the trial court reviewed the

12  plea form together, and that the plea form contained all of the trial court's conditions. Id.  After

13  this, the trial court asked Petitioner whether he "freely and voluntarily agre[ed] to the pleas, to

14  which [Petitioner] answered affirmatively." Id.  Thus, the appellate court found that Petitioner's

15  plea was voluntary and knowing. Id.

16          Having reviewed the record, this Court concludes that Petitioner's plea was knowing and

17  voluntary.  The underlying record establishes that Petitioner discussed the plea agreement in

18  court, and after being asked whether he fully understood it, agreed to its terms.  As the appellate

19  court recognized, there is nothing in the record that demonstrates that Petitioner made anything

20  less than a voluntary and knowing plea.  Petitioner fails to overcome the presumption of

21  correctness to which the state court's factual findings are entitled under section 2254(e)(1).

22  Accordingly, the state court's determination was not contrary to, or an unreasonable application

23  of, clearly established Supreme Court precedent, nor was it based on a unreasonable

24  determination of the facts in light of the evidence presented.  28 U.S.C. § 2254(d)(1),(2).

25  ///

26  ///

27  ///

28  ///

1    4.    Petitioner Did Not Have a Right to a Jury Trial on the Sentencing Fact Arising
           From the Violation of the Restraining Order.

2

3    Petitioner maintains that because "the factual question of whether [he] had violated the

4    restraining order was a sentencing factor," he was entitled to a jury trial on that issue.  Petition at

5    8.  As discussed previously, the state appellate court found that the trial court acted properly in

6    determining that Petitioner did not have a right to a jury trial as to this issue.

7    This Court concludes that the trial court did not violate Petitioner's right to a jury trial on

8    the alleged violation of the restraining order.  The record shows that Petitioner reasonably

9    understood that the terms of the plea agreement, which provided that if he violated the restraining

10   order the court would not be bound to the agreement but that Petitioner could not withdraw his

11   agreement.  Put simply, Petitioner waived his right to a jury as to whether there was a violation of

12   the restraining order as part of his plea.  See Blakely, 542 U.S. at 310 (nothing prevents a

13   defendant from waiving his Apprendi rights).  The trial court's finding that Petitioner violated

14   the terms of the restraining order was properly based on the evidence presented at the hearing and

15   subject to the applicable rules of evidence.  Accordingly, Petitioner is not entitled to federal

16   habeas relief on his Apprendi claim.  The state court's determination was not contrary to, or an

17   unreasonable application of, clearly established Supreme Court precedent, nor was it based on a

18   unreasonable determination of the facts in light of the evidence presented.  28 U.S.C. §

19   2254(d)(1),(2).

20                                    **III. CONCLUSION**

21   This Court concludes that Petitioner has failed to show any violation of his federal

22   constitutional rights in the underlying state criminal proceedings.  Accordingly, the petition for

23   the writ of habeas corpus is DENIED.  Petitioner's motion in support of granting a calendar

24   priority (docket no. 15) is DENIED as moot.  The Clerk shall enter judgment and close the file.

25       IT IS SO ORDERED.

26   DATED:___5/15/08_____

                                          _____
27                                        JEREMY FOGEL
                                          United States District Judge

28